# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

WILLIAM G. TAYLOR, )
 )
          Plaintiff, )
v. )   Case No. CIV-16-122-SPS
 )
NANCY A. BERRYHILL, )
Acting Commisioner of the Social )
Security Administration,[1] )
 )
          Defendant. )

## OPINION AND ORDER

The claimant William G. Taylor requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying his application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the decision of the Commissioner should be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn Colvin as the Defendant in this action.

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]"  42 U.S.C. § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).  This Court's review is limited to two inquiries:  (1) whether the decision was supported by substantial evidence, and (2) whether the correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted].  The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).  Nevertheless, the Court

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on October 27, 1972, and was forty-two years old at the time of the administrative hearing (Tr. 28, 172). He completed the twelfth grade, and has worked as a furniture assembler and furniture mover (Tr. 21, 226). The claimant alleges he has been unable to work since January 12, 2012, due to back problems, arthritis in both knees and shoulders, psoriasis, and depression (Tr. 225).

## Procedural History

On October 4, 2011, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ James Bentley held an administrative hearing and determined the claimant was not disabled in a written decision dated January 26, 2015 (Tr. 10-23). The Appeals Council denied review, so the ALJ's written opinion represents the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. At step four, he found that the claimant retained the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), *i. e.*, he could lift/carry

-3-

twenty pounds occasionally and ten pounds frequently, and stand/walk and sit for six hours each in an eight-hour workday. Additionally, the ALJ determined that the claimant could frequently handle/finger bilaterally, and that he required a sit/stand option defined as a temporary change in position from sitting to standing and vice versa without more than one change in position every twenty minutes and without leaving the work station so as not to diminish pace or production. Finally, the ALJ determined that the claimant could perform simple and somewhat more complex tasks with routine supervision, and that he could interact with the public on a superficial basis (Tr. 16). The ALJ then concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *e. g.*, small product assembler, electrical accessory assembler, and inspector packer (Tr. 21-22).

### Review

The claimant contends that the ALJ erred by: (i) failing to properly assess his RFC by dismissing certain impairments, failing to obtain a consultative examiner's opinion, improperly disregarding a Third Party function report, and improperly assessing his credibility; and (ii) improperly determining he could perform the jobs identified at step five. The Court finds these contentions unpersuasive for the following reasons.

The ALJ found that the claimant had the severe impairments of lumbago, psoriasis, dysthymia, dependent personality traits, and depression (Tr. 12). Medical records from 2011 include an x-ray of the lumbar spine revealing minimal degenerative endplate changes most pronounced at the superior endplate of L3 (Tr. 279). Treatment notes from the Stigler Health and Wellness center indicate the claimant reported back

pain and was assessed with psoriasis, lumbago, and depression (Tr. 295-297). A February 25, 2013 x-ray of the lumbar spine revealed a normal lumbar spine (Tr. 299).

On July 8, 2014, the claimant was admitted with atypical chest pain and high blood pressure, along with chronic back pain and psoriasis, and was discharged two days later with diagnoses of nonanginal chest pain, nicotine dependence, chronic back pain, and psoriasis (Tr. 321). Following a cardiac workup, there was evidence of nonobstructive single-vessel coronary artery disease, as well as a normal global left ventricular systolic function (Tr. 401). A nuclear stress test revealed no inducible ischemia on myocardial perfusion imaging (Tr. 405).

On April 23, 2013, Dr. Theresa Horton conducted a diagnostic interview and mental status exam of the claimant (Tr. 303). She noted he had a limited history of suicidal ideation, and continued to struggle with his mother's 1995 death, but had no plans to harm himself (Tr. 305). She found his mood to be predominantly depressed, but that he was oriented, and had intact recall and memory, adequate concentration, and average intelligence (Tr. 305). He appeared to have appropriate judgment but poor insight (Tr. 305). She assessed him with late onset dysthymia and dependent personality traits, and stated that he appeared capable of understanding, remembering, and managing simple and somewhat more complex instructions and tasks (Tr. 306). She found he appeared capable of adequate social/emotional adjustment into most settings, and would benefit emotionally from employment if physically able (Tr. 306). She also recommended supportive counseling or vocational training, noted that he could not be

successful in counseling because he was not ready, and recommended a testosterone level check before medication treatment of the claimant's depression (Tr. 306).

On May 14, 2013, Dr. Ronald Schatzman conducted a physical exam of the claimant. The exam was largely normal, except that the claimant had 0 degree extension of his back with apparent pain, although the cervical, lumbar, and thoracic spines were non-tender with full range of motion (Tr. 310-314). He noted the claimant's gait was safe and stable without the need for assistive aids, and that heel/toe walking was normal (Tr. 310). He assessed the claimant with tobacco abuse, psoriasis, chronic back pain (possibly psoriatic arthritis), and hypertension (Tr. 310).

State reviewing physicians found the claimant capable of perform the full range of medium work (Tr. 54, 86-87). As to his mental impairments, state physicians found the claimant was moderately limited in the typical three areas of ability to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the general public (Tr. 56-57). "LML, PhD." concluded that that the claimant could perform simple and some complex tasks, relate to others on a superficial work basis, and adapt to a work situation, and this was affirmed on reconsideration (Tr. 57, 88-89).

At the administrative hearing, the claimant testified that he lost his most recent job for missing too many days due to his back (Tr. 32). He testified that he cannot stand or sit for long periods of time due to his back, that he does not do housework but that he makes himself sandwiches, that he could not afford his medications, and that he got shots for his psoriasis because they were through a free program (Tr. 34, 35-36, 38).

The claimant's friend/foster mother Kathy Real completed a Third Party Function Report, indicating that she has known him twenty-five years and she sees him approximately once a week (Tr. 244). She indicated that his back and knees are bad which means he cannot stand or sit very long because of his pain, and that he stays depressed because he cannot work (Tr. 244). She stated that he usually only eats once a day and prepares simple meals of sandwiches or ramen, that he does not do any chores or yard work because of his back, and that he does not handle stress or routine changes very well (Tr. 246-250).

In his written opinion, the ALJ summarized the claimant's hearing testimony, as well as the medical evidence in the record. The ALJ thoroughly summarized Dr. Schatzman's exam findings, and noted the management of the claimant's psoriasis and the lack of prescription pain medication (Tr. 18). Acknowledging the claimant's reported inability to sit for long periods, the ALJ noted that the claimant was able to go to Oklahoma City, an approximate three-hour drive, for treatment (Tr. 18). He then summarized Ms. Real's Third Party Function Report, but noted she is a non-medical source and that her statements were outweighed by the medical evidence indicating that the claimant had minimal degenerative changes of the lumbar spine, his psoriasis had improved, and he only appeared "mildly" depressed when assessed by Dr. Horton (Tr. 19). The ALJ then gave Dr. Horton's opinion great weight, finding it consistent with the rest of the medical evidence in the record. As to the state reviewing physicians, the ALJ gave great weight to the physical findings, but modified them to light work based on the claimant's subjective complaints at the hearing. He likewise gave great weight to the

mental RFC assessments performed by the state physicians, finding they were fully supported by the medical evidence (Tr. 20). Noting the "paucity of treatment records," the ALJ found that the evidence tended to support a finding that the claimant could perform a range of light work (Tr. 20).

The claimant contends, *inter alia*, that the ALJ erred in analyzing the opinions of Dr. Schatzman and Dr. Horton. "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted] [emphasis added], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-1301 (10th Cir. 2003) [quotation marks omitted], *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). The claimant's specific complaint is that the ALJ failed to obtain enough information from Dr. Schatzman and Dr. Horton

regarding how the limitation of his range of motion affected her work functioning and how his cognitive issues, *i. e.*, difficulty spelling "world" backwards, limited ability to perform serial threes, poor insight, and likelihood of failure in a counseling setting, would impact his ability to perform work. The Court finds, however, that the ALJ adequately discussed and analyzed both Dr. Schatzman and Dr. Horton's opinions, and explained his reasons for the weight he assigned them.

The claimant also contends that the ALJ erred in assessing his credibility, arguing that the ALJ improperly relied on certain factors (such as the claimant's infrequent doctor visits, his lack of prescription medication, and his ability to sit during the drive to Oklahoma City), and that the ALJ improperly rejected his argument regarding lack of finances. Under the applicable standard at the time of the ALJ's decision, a credibility determination would be entitled to deference unless there is some indication that the ALJ misread the medical evidence as a whole. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991). An ALJ could disregard a claimant's subjective complaints of pain if unsupported by any clinical findings. *Frey v. Bowen,* 816 F.2d 508, 515 (10th Cir. 1987). But the ALJ's credibility findings were required to be "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [citation omitted]. A credibility determination "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996). In this case, the Court finds that the ALJ set out

the appropriate credibility factors, and cited evidence supporting his reasons for finding that the claimant's subjective complaints were not believable to the extent alleged, *i. e.*, the ALJ gave clear and specific reasons that were specifically linked to the evidence in the record. The ALJ therefore did not err in analyzing the claimant's credibility.[3]

The claimant further contends that the ALJ failed to properly evaluate Ms. Real's Third Party Function Report. Social Security Ruling 06-03p provides the standard for evaluation of third party evidence such as that this. Other source evidence, such as functional reports or testimony from spouses, parents, friends, and neighbors, should be evaluated by considering the following factors: (i) the nature and extent of the relationship; (ii) whether the evidence is consistent with other evidence; and (iii) any other factors that tend to support or refute the evidence. Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006). However, specific written findings about each lay witness's credibility are not necessarily required, particularly where the ALJ's written decision reflects that he considered the evidence. *See Adams v. Chater,* 93 F.3d 712, 715 (10th Cir. 1996). Here, the ALJ specifically referenced and assessed Ms. Real's Third Party Function Report (Tr. 19), which was largely cumulative of other evidence in the case, *see Brescia v. Astrue,* 287 F. Appx. 626, 630 (10th Cir. 2008) (specific credibility determination not required for lay witness statements that are largely cumulative of other

---

[3] The Court notes that the Social Security Administration eliminated the term "credibility" in Soc. Sec. Rul. 16-3p, 2016 WL 1119029 (Mar. 16, 2016), and has provided new guidance for evaluating statements pertaining to intensity, persistence, and limiting effects of symptoms in disability claims. The Court finds that even under the new standard, the ALJ properly evaluated the claimant's credibility.

evidence), including the claimant's own testimony and written statements, which as discussed above the ALJ properly found were not entirely credible.

The claimant also contends that the ALJ erred by failing to properly assess his RFC. The Court disagrees. The claimant argues, for example, that the ALJ failed to account for his chest pain, exertional dyspnea, and psoriatic arthritis, but the ALJ noted and fully discussed all of the findings of the claimant's various treating, consultative, and reviewing physicians, including the records related to the claimant's chest pain and psoriasis (Tr. 17-21). The ALJ also noted Dr. Schatzman's assessment regarding the claimant's possible psoriatic arthritis (Tr. 18), and despite the claimant's arguments to the contrary, did account for the range of motion limitations supported by the record. The Court finds that when all the evidence is taken into account, the conclusion that the claimant could perform light work is well supported by substantial evidence. *See Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). The Court finds no error in the ALJ's failure to include any additional limitations in the claimant's RFC. *See, e. g., Best-Willie v. Colvin,* 514 Fed. Appx. 728, 737 (10th Cir. 2013) ("Having reasonably discounted the opinions of Drs. Hall and Charlat, the ALJ did not err in failing to include additional limitations in her RFC assessment.").

Finally, the claimant contends that he cannot perform the jobs identified at step five because he cannot perform the RFC set forth by the ALJ. But as discussed above, the Court finds that substantial evidence supports the ALJ's determination that the claimant can perform less than the full range of light work. The final contention is therefore without merit. In essence, the claimant asks the Court to reweigh the evidence in his favor, which the Court cannot do. *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000) ("In conducting our review, we may neither reweigh the evidence nor substitute our judgment for that of the Commissioner.") *citing Casias*, 933 F.3d at 800.

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 25th day of September, 2017.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**